**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

OPERATING ENGINEERS LOCAL 139
HEALTH BENEFITS FUND, et. al.,

      Plaintiffs and Third-Party Plaintiffs,

    v.                                  Case No. 08-C-1103

HUML CONTRACTORS INC.,
ROBERT F. HUML, III,

      Defendants,

      and

J.H. FINDORFF & SON, INC.,
NAATZ DEVELOPMENTS, LLC.,
PROFESSIONAL POWER PRODUCTS, INC.,
R. H. BATTERMAN & CO., INC.,
STRAND ASSOCIATES, INC., and
MIRON CONSTRUCTION CO., INC.,

      Garnishee Defendants,

      and

ROBERT F. HUML, JR.,

      Intervenor-Defendant and Third-Party Defendant

## DECISION AND ORDER

On December 17, 2008, the plaintiffs filed suit against Robert F. Huml, III, and Huml Contractors, Inc. The plaintiffs alleged, and the defendants admitted, that the defendants did not make the required fringe benefit contributions to the plaintiffs and that the defendants breached a promissory note. On April 8, 2009, the court approved the

1

parties' proposed agreed judgment order, pursuant to which judgment was entered in favor of the plaintiffs. The defendants were found liable to the plaintiffs for unpaid contributions to the funds, delinquent payment assessments, and interest; the balance due on the promissory note; and costs and attorneys' fees incurred in this matter. The amounts due to the plaintiffs were divided between the two defendants, plus post-judgment interest on the amounts as set forth in 28 U.S.C. § 1961.

In April 2009 and March 2010, the plaintiffs filed garnishment summonses and complaints against the garnishee defendants. By these summonses, the plaintiffs contend that they "believe[] that the garnishee is indebted to or has control or possession over property of the debtor" to which the plaintiffs are entitled as a result of the April 2009 judgment in this case. (Garnishment Summons and Complaint for Non-Earnings at 1).

On June 16, 2009, Robert F. Huml, Jr., intervened, asserting that he had a prior interest in the property which the plaintiffs were attempting to garnish. On March 29, 2010, the intervenor moved for summary judgment on this ground, which the court denied on March 31, 2011. (See Court's Decision and Order of March 31, 2011, at 11-12).

On June 27, 2011, the plaintiffs filed a third-party complaint against the intervenor-defendant and third-party defendant, Robert F. Huml, Jr. The matter was tried to the court on August 8, 2011.

Prior to trial, the parties submitted proposed findings of fact and conclusions of law. At the outset, the court notes that it was in these pre-trial submissions that the plaintiffs first raised several claims regarding the validity of general security agreements entered into between the intervenor and the defendants. The plaintiffs did not raise these issues in their third-party complaint against the intervenor, nor did they seek to amend their third-

2

party complaint to incorporate these claims. At the final pre-trial conference, the intervenor objected to the untimely introduction of these issues. However, the court permitted the parties to brief the newly-raised issues post-trial and will address them herein. Having carefully considered the testimony and evidence adduced at trial as well as the pre- and post-trial submissions of the parties, the court sets forth the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52.

## FINDINGS OF FACT

On April 8, 2009, this court granted judgment in favor of the plaintiffs pursuant to a stipulation of the parties. The judgment was for unpaid fringe benefit contributions against Huml Contractors, Inc. (HCI) in the amount of $350,592.41 and against Robert Huml, III[1] (Robert III) on a promissory note (the Union Funds Note) he executed in April of 2006 for a portion of such contributions in the amount of $109,265.67. After judgment was entered against the original defendants, as noted, the plaintiffs initiated garnishments against HCI and the garnishee defendants in an attempt to collect against their judgment from the accounts receivable of HCI. After initiation of said garnishments, Robert Huml, Jr. (Robert Jr.), the father of Robert III and Dean Huml, intervened in this action because he claims a prior right of interest in said receivables.

HCI was incorporated in Wisconsin in 1989 as a commercial construction business. Robert III was president and treasurer of HCI, and also a director of HCI, before 1999. He was not involved with HCI between January of 1999 and April of 2001, but returned as an officer and director after April 2001. Dean Huml, Robert III's brother,

---

[1] The parties agree that the defendant identified as Robert Huml is Robert Huml, III, not to be confused with his father, Robert Huml, Jr., who is the intervenor-defendant and third-party defendant.

was president from 1999 through at least 2004. Robert III became president again in 2005 and has continued as president since that time.

Robert Jr. was a shareholder, secretary, and director of HCI until December of 2005, when he resigned his offices and his directorship and gave up his stock. At the time HCI was incorporated, Robert Jr. was a licensed insurance agent and also was involved in real estate development with his cousin. He also owned the HCI shop and real estate on which the shop was located, and leased the shop to HCI at below market rates. Robert Jr. had regular access to the financial records of HCI. HCI had a negative net equity in 1994 and 1995, positive net equity in 1996 and 1997, and negative net equity thereafter.

Robert Jr. primarily served as the source of operating funds for HCI. He was the largest creditor of HCI and loaned money to HCI throughout its existence. Initially, there was no note or security agreement in place to evidence Robert Jr.'s loans to HCI, but at some time prior to 2003, HCI began signing promissory notes and security agreements to evidence its debt to Robert Jr. Robert Jr. testified that he drafted the notes and agreements himself using forms on a computer software program.

On December 28, 2003, HCI and Robert Jr. entered into a General Security Agreement (2003 GSA). The 2003 GSA secured payment under a promissory note in the original principal amount of $800,000. (Trial Transcript [Tr.] at 24; Exh. 1000). At the time of the execution of the 2003 GSA, HCI owed Robert Jr. $741,000 in principal alone, not including accrued interest. (Tr. at 25; Exh. 500). On December 30, 2004, HCI and Robert Jr. entered into a second General Security Agreement (2004 GSA). At the time the 2004 GSA was executed, HCI owed Robert Jr. $877,225 in principal alone, not

4

including accrued interest. On December 30, 2005, HCI and Robert Jr. entered into a third General Security Agreement (2005 GSA). At the time the 2005 GSA was executed, HCI owed Robert Jr. $922,215 in principal alone, not including accrued interest. The GSAs signed by HCI in favor of Robert Jr. state that payment on the notes identified therein is secured by "all of the present and future undertaking and property, both real and personal, of the Debtor," expressly including accounts receivable. (Exhs. 1000, 1001,1002, and 4).

Robert Jr. testified that each GSA and promissory note acted as a superseding GSA and note and incorporated the previous debts. He further testified that because each note renewed the previous notes, he kept only the most recent promissory note and believes that he threw away the earlier notes. He could not locate copies of the promissory notes that accompanied the 2003, 2004, and 2005 GSAs.

On April 18, 2006, Robert III signed the Union Funds Note in the original principal amount of $191,805.06, representing unpaid contributions due at the time from HCI to the plaintiffs. Robert III personally guaranteed the Union Funds Note. The Union Funds Note provided for monthly payments of $7,991.88 per month beyond the current contributions due from HCI to the Funds. At the time the Union Funds Note was executed, HCI owed Robert Jr. $977,215 in principal, not including interest. The plaintiffs did not take a security interest from HCI or Robert III to secure the Union Funds Note. Robert Jr. testified that he was not aware that Robert III had signed the Union Funds Note until a few months after it was executed. He was concerned because he knew that HCI could not make the payments on the Union Funds Note and because he did not think it was smart for Robert III to personally guarantee the Union Funds Note.

5

The security interest created by the 2003, 2004, and 2005 GSAs was not filed with the Wisconsin Department of Financial Institutions (DFI) until August 10, 2006, when Robert Jr. filed a financing statement with the Wisconsin DFI referencing his claimed security interest in the assets of HCI. Robert Jr. testified that he did not realize until this date that it was necessary to file a financing statement in order to perfect his security interest. Once he was informed of this requirement, he filed the financing statement to protect his interest and to put other creditors on notice of his interest. The financing statement identifies the debtor, the secured party, and the collateral. At the time of the filing of the financing statement with the DFI, Robert Jr. knew or had reason to know that HCI was insolvent. Robert Jr. also knew at the time of filing the financing statement that HCI owed a debt to the funds.

On August 30, 2006, Robert Jr. sent a letter to the plaintiffs notifying them of his loans to HCI, his security interest in HCI, and the fact that HCI would not be able to make the payments under the Union Funds Note. Robert Jr. proposed an alternate payment schedule to the plaintiffs. The plaintiffs did not agree to this proposal.

In the three months following the execution of the Union Funds Note, HCI made monthly payments to the plaintiffs in the required amount of $7,991.88. Thereafter, HCI made smaller monthly payments in increments of $2,000 and $3,000 from September of 2006, through September of 2008. The plaintiffs accepted these reduced payments.

On December 29, 2006, a new promissory note in the original principal amount of $1,200,000 and a new general security agreement (2006 GSA) were executed by HCI to Robert Jr. Robert Jr. testified that the promissory note was a renewal of the prior promissory notes, but admitted that there was no language regarding renewal in the

6

December 29, 2006, promissory note. On December 29, 2006, HCI owed Robert Jr. $1,037,215 in principal, not including interest. At the time of the trial, the 2006 promissory note was the only promissory note that Robert Jr. had in his possession.

Robert Jr. continued to loan money to HCI in 2007, 2008, and 2009. The amount due to him from HCI continues to exceed $1,200,000. On March 22, 2009, HCI and Robert Jr. entered into an "Agreement for Surrender of Assets" (Agreement) dated the same day. (Exh. 14). Pursuant to the Agreement, HCI transferred all of its assets, including its accounts receivable, machinery, and equipment, to Robert Jr. This occurred 17 days before the parties filed their Agreed Judgment Order for judgment against HCI and Robert Huml, III, in the underlying action. Robert Jr. sold some of the equipment, but then he formed a corporation, RFH, Inc., which owns the remaining equipment that was surrendered to him pursuant to the Agreement. RFH Inc. leases this equipment out to other entities. The total value of the assets surrendered by HCI to Robert Jr. is significantly less than the amount due to Robert Jr. from HCI.

### ANALYSIS AND CONCLUSIONS OF LAW

The original action was brought pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132, 1145. Subsequently, the court approved the agreed judgment entered into by the plaintiffs and defendant Huml Contractors, Inc.. Robert Huml, Jr. then moved to intervene and his motion was granted. This matter tried to the court is supplemental to the original action. Jurisdiction is based on the supplemental nature of the intervenor's claims as provided by 28 U.S.C. § 1367(a).

The plaintiffs assert that the issue in this case centers on the validity of the financing statement filed by Robert Jr. in August 2006. The plaintiffs contend that Robert

7

Jr.'s interests in the accounts receivable of HCI do not have priority over the plaintiffs' interests for several reasons. The plaintiffs maintain that Robert Jr. contributed money to HCI as an investment, not as a loan. The plaintiffs also assert that the 2003, 2004, and 2005 GSAs did not create a valid, enforceable security interest because those agreements fail for lack of consideration. According to the plaintiffs, there is no consideration because neither Robert Jr. nor Robert III can produce promissory notes for these GSAs. In addition, the plaintiffs state that the 2006 GSA was never perfected because Robert Jr. was not authorized to pre-file the financing statement. In the alternative, the plaintiffs assert that even if the GSAs are facially valid and were properly perfected, the August 10, 2006, filing of the financing statement constitutes a fraudulent transfer. Robert Jr. objects to each of the plaintiffs' contentions.

Chapter 409 of the Wisconsin Statutes, which is modeled after Article Nine of the Uniform Commercial Code (UCC), governs secured transactions, which allows creditors to take a security interest in collateral held by their debtors. A security interest is created and becomes enforceable against a debtor and third parties only when it "attaches" to collateral. Wis. Stat. § 409.203(1). A security interest attaches only if:

(a) value has been given [to the debtor];

(b) the debtor has rights in the collateral . . .; and

(c)(1) the debtor has authenticated a security agreement that provides a description of the collateral.

Wis. Stat. § 409.203(2); Smith & Spidahl Enterprises, Inc. v. Lee, 557 N.W.2d 865, 868 (Wis. Ct. App. 1996). "[A] person gives value for rights if he acquires them . . . in return for any consideration sufficient to support a simple contract." Wis. Stat. § 401.204(4). Under Wisconsin law, consideration may consist of a benefit to the promisor or a

8

detriment to the promisee.  First Wisconsin Nat. Bank of Milwaukee v. Oby, 188 N.W.2d 454, 456-57 (Wis. 1971) (citations omitted).  The security agreement itself need only identify the debtor and secured party and describe the collateral securing the underlying obligation.  Wis. Stat. §409.203.

An attached security interest is enforceable against the debtor, but it must be perfected in order to have priority against subsequent security interests or the rights of lien creditors.  Wis. Stat. § § 409.322, 409.317(1)(b); Muggli Dental Studio v. Taylor, 419 N.W.2d 322, 324 (Wis. Ct. App. 1987).  A security interest is perfected when it has attached and all applicable requirements for perfection have been satisfied.  Wis. Stat. §409.308(a).  Unless perfected automatically or by possession or control, a financing statement must be filed to perfect a security interest.  Wis. Stat. § 409.310(a).

A financing statement must include the debtor's name, the name of the secured party, and a description of the collateral.  Wis. Stat. § 409.502(a).  The financing statement may be filed before (pre-filing) or after the security agreement is entered into or security otherwise attaches.  Wis. Stat. § 409.502.  Delay in filing the financing statement does not negate perfection.  Sentry Select Ins. Co. v. LBL Skystems, Inc., 486 F. Supp. 2d 496, 510 (E.D. Penn. 2007) (applying a statute substantially similar to Wis. Stat. §409.502, the court held that a financing statement filed four years after the security agreement was entered into perfected the security interest in the described collateral).

The purpose of the financing statement is to put potential creditors on notice that a party has a secured interest in the debtor's property.  Helms v. Certified Packaging Corp., 551 F.3d 675, 680 (7th Cir. 2009).  Pursuant to Wis. Stat. § 409.509, a person may file an initial financing statement only if the debtor authorizes the filing in an authenticated record

9

such as a security agreement. "By authenticating or becoming bound as a debtor by a security agreement, a debtor . . . authorizes the filing of an initial financing statement." Wis. Stat. § 409.509(2). Authorization by a security agreement covers only the collateral described in the security agreement. Wis. Stat. § 409.509(2)(b).

Wisconsin's Uniform Fraudulent Transfer Act (UFTA) permits creditors to obtain an "avoidance" of a debtor's transfer of assets "to the extent necessary to satisfy the creditors claim" when that transfer was fraudulent. Wis. Stat. § 242.07.

The UFTA defines when transfers may be found to be fraudulent. It provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay or defraud any creditor of the debtor; or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> 2. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.
>
> (2) In determining actual intent under sub. (1)(a), consideration may be given, among other factors, to whether:
>
> (a) The transfer or obligation was to an insider; (b) The debtor retained possession or control of the property transferred after the transfer; (c) The transfer or the obligation was disclosed or concealed; (d) Before the transfer was made or the obligation incurred, the debtor had been sued or threatened with suit; (e) The transfer was of substantially all the debtors assets; (f) The debtor absconded; (g) The debtor

10

removed or concealed assets; (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (I) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation incurred; (j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Wis. Stat. § 242.04. The plaintiffs bear the burden to establish fraud by clear and convincing evidence. See SJ Props. Suites v. STJ, P.C., 2010 Dist. LEXIS 134067, *23 (E.D. Wis. Dec. 17, 2010) (citing Williams v. Rank & Son Buick, Inc., 44 Wis. 2d 239 [Wis. 1969]).

Despite the plaintiffs' assertions that Robert Jr. contributed money to HCI as investments rather than as loans, the court finds that Robert Jr.'s contributions to HCI were loans. Robert Jr. testified in a clear and straightforward manner regarding the nature of his contributions to HCI and the court found him to be a credible witness. Robert Jr. treated his contributions as loans, recording them as such. (Tr. at 16-19, Exh. 5). In addition, HCI treated the funds as loans, recording the payments due to Robert Jr. as debt. (Tr. at 40, Exh. 11). The plaintiffs assert that Robert Jr. himself once referred to his contributions as investments. However, the fact that Robert Jr. once used the word "invest" during the course of a long morning of testimony does not negate the fact that both he and HCI understood and treated his contributions as loans, not investments.

The court also concludes that there was adequate consideration to support the 2003, 2004, and 2005 GSAs. While neither Robert Jr. nor Robert III could locate the promissory notes that accompanied these agreements, both testified that they existed. Robert Jr. explained why he did not have these promissory notes when he testified that

11

he considered each promissory note a renewal of the previous notes and therefore he only kept the most recent note – the one that accompanied the 2006 GSA and which constituted a renewal of the prior notes.  Robert III's testimony supported this when he referred to the notes as "cumulative" and stated that "we just renewed our notes – our note as we went along." (Tr. 100-101).  Furthermore, under Wisconsin law, the loss of a promissory note does not make it unenforceable.  See Wis. Stat. § 403.309 ("A person not in possession of an instrument is entitled to enforce the instrument" under certain circumstances).

Although the plaintiffs make much of the fact that the 2006 promissory note does not contain language indicating that it is a renewal of previous notes, Robert Jr. testified that he used a computer software program to draft the notes and that he did not realize that such language was necessary.  Robert Jr.'s records of his loans support his testimony that he treated each note as a renewal of the previous note rather than as a new and separate debt.

In light of Robert Jr.'s testimony and the supporting evidence, the court finds that there simply is no support for the plaintiffs' implications that Robert Jr. was not truthful when he stated that promissory notes accompanied each of the 2003, 2004, and 2005 GSAs.  Thus, the court concludes that there was adequate consideration and that each of these GSAs created a valid and enforceable security interest in the assets of HCI.

Given that the court finds the 2003, 2004, and 2005 GSAs to be valid, the court need not address the plaintiffs' arguments regarding the validity of pre-filing a financing statement because the 2006 financing statement was not pre-filed.  In addition, as already established, a delay in filing a financing statement does not negate perfection.

12

See Wis. Stat. § 409.502; Sentry Select Ins., 486 F. Supp. at 510.  Therefore, each of the 2003, 2004, and 2005 GSAs were perfected on August 10, 2006, when Robert Jr. filed a financing statement with the Wisconsin DFI.  Accordingly, Robert Jr.'s perfected security interest has priority over the interests of the plaintiffs in HCI's accounts receivable.

The only issue that remains to be determined is whether the transfer that occurred when Robert Jr. filed the financing statement constitutes a fraudulent transfer. Specifically, the court must decide whether HCI acted with the specific intent to defraud its creditors.  The facts establish, and the parties do not dispute, that Robert Jr. is an insider as to HCI, that HCI was insolvent at the time of the transfer, that the transfer consisted of all or substantially all of HCI's assets, and that the transfer occurred shortly after Robert Jr. learned that HCI had incurred a sizeable debt to the plaintiffs.

In contrast to the plaintiffs' contentions that Robert Jr. filed the financing statement to hinder, delay, or defraud them, Robert Jr. testified that he did not file the financing statement earlier because he did not realize he was supposed to do so.  (Tr. at 34-35). Once he realized that filing the financing statement would protect his security interest in the assets of HCI, he testified that he filed it not only to protect his own interest but to "put people on notice."  Id.  In addition, on August 30, 2006, shortly after filing the financing statement, Robert Jr. wrote a letter to the plaintiffs disclosing that he had a security interest in the assets of HCI and that HCI was insolvent.  Thus, neither HCI nor Robert Jr. attempted to hide their relationship or the security interest from the plaintiffs.  The plaintiffs took no action at that point in time.  Rather, they accepted significantly reduced payments from HCI for two years before attempting to enforce the terms of their note with HCI and Robert III.  In response to a question about whether HCI intended to "delay,

13

defraud, or mislead" the plaintiffs at any time, Robert III testified, "absolutely not." (Tr. at 99).

Given the credible testimony and evidence introduced at trial, this court finds that the plaintiff failed to establish by clear and convincing evidence that HCI, or Robert Jr. for that matter, acted with the specific intent to delay or defraud the creditors by transferring HCI's assets to Robert Jr. Rather, the court finds that Robert Jr. filed the financing statement to perfect his longstanding and valid security interest in HCI's assets.

In sum, the court finds that the 2003, 2004, and 2005 GSAs created a valid and enforceable security interest in the assets of HCI in favor of Robert Jr. This security interest was perfected when Robert Jr. filed a financing statement in August of 2006. Thus, Robert Jr.'s interest has priority over the interests of the plaintiffs in HCI's accounts receivable. Furthermore, there is no evidence of a fraudulent transfer between HCI and Robert Jr., because neither party acted with the intent to hinder, delay, or defraud HCI's other creditors.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the court finds in favor of the Intervenor-Defendant and Third-Party Defendant, Robert F. Huml, Jr., on the plaintiffs' claims against him as set forth in the third-party complaint and at trial.

**IT IS FURTHER ORDERED** that this action be and hereby is dismissed.

**IT IS ALSO ORDERED** that the Clerk of Court shall enter judgment accordingly.

14

Dated at Milwaukee, Wisconsin this 28th day of February, 2012.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge

15